**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COLLEEN M. BRADLEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | No. 15-2681 |
| WEST CHESTER UNIVERSITY OF THE | : | |
| PENNSYLVANIA STATE SYSTEM OF | : | |
| HIGHER EDUCATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BRUCE R. BEEMER
Attorney General

BY: /s/ Kevin R. Bradford
KEVIN R. BRADFORD (Pa. No. 88576)
Senior Deputy Attorney General

BY: /s/ Stephen R. Kovatis
STEPHEN R. KOVATIS (Pa. No. 209495)
Deputy Attorney General

COMMONWEALTH OF PENNSYLVANIA                KENNETH L. JOEL
OFFICE OF ATTORNEY GENERAL                  Chief Deputy Attorney General
21 South 12th Street, 3rd Floor             Chief, Litigation Section
Philadelphia, PA 19107-3603
Telephone:  (215) 560-2940
Fax:  (215) 560-1031
skovatis@attorneygeneral.gov

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND .............................................................................................. 2

   A.   Facts. ............................................................................................................ 2

   B.   Procedural History......................................................................................... 3

III.    ARGUMENT ................................................................................................... 4

   A.   Standard of Review. ..................................................................................... 4

   B.   Mixner Is Entitled to Qualified Immunity on the First Amendment Claim.................... 4

      1.   Plaintiff Cannot Establish a First Amendment Retaliation Claim. ............................ 5

      2.   It Is Not Clearly Established That Plaintiff Engaged in Protected Speech................ 14

   C.   Mixner Is Entitled to Summary Judgment on the Emotional Distress Claims. ............ 16

      1.   Mixner Is Entitled to Sovereign Immunity. ................................................. 16

      2.   Plaintiff's Emotional Distress Claims Are Barred by Pennsylvania's Worker's Compensation Act................................................................................ 18

      3.   Plaintiff Cannot Establish a Claim of Intentional or Negligent Infliction of Emotional Distress................................................................................. 19

IV.     CONCLUSION............................................................................................... 21

i

# TABLE OF AUTHORITIES

## Cases

*Alden v. Maine*, 527 U.S. 706 (1999) ..................................... 16

*Anderson v. Creighton*, 483 U.S. 635 (1987) ............................ 15

*Anemone v. Metro. Transp. Auth.*, 629 F.3d 97 (2d Cir. 2011) .................... 9

*Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074 (2011) ................... 15

*Baker v. McCollan*, 443 U.S. 137 (1979) .................................. 4

*Beckinger v. Twp. of Elizabeth*, 697 F. Supp. 2d 610 (W.D. Pa. 2010)........................ 16

*Brumfield v. Sanders*, 232 F.3d 376 (3d Cir. 2000) ........................ 17

*Burger v. Sec'y of Revenue ex rel. Pa. Dep't of Revenue*, 575 Fed. Appx. 65 (3d Cir. 2014) ..... 14

*Connick v. Myers*, 461 U.S. 138 (1983)........................................ 6

*Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir. 1988).................... 19, 20

*Curinga v. City of Clairton*, 357 F.3d 305 (3d Cir. 2004) ........................ 11

*Denton v. Silver Stream Nursing and Rehabilitation Center*, 739 A.2d 571 (Pa. Super. Ct. 1999) ...................... 20

*Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979 (3d Cir. 2014) .................. 10

*Eichenlaub v. Twp. of Indiana*, 385 F.3d 274 (3d Cir. 2004) ..................... 6

*Elmore v. Cleary*, 399 F.3d 279 (3d Cir. 2005) ............................... 4

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271 (3d Cir. 2000).................. 13

*Foraker v. Chaffinich*, 501 F.3d 231 (3d Cir. 2007)........................ 7, 8, 9

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) .............................. passim

*Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009) ..................... 7, 8, 9

*Hara v. Pa. Dep't of Educ.*, 492 Fed. Appx. 266, 268 (3d Cir. 2012)...................... 11

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ................................. 5

*Hays v. LaForge*, No. 14 -0148, 2015 WL 4087070 (N.D. Miss. July 6, 2015) ................ 9

*Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006) ..................... 5, 6

*Imboden v. Chowns Communications*, 182 F. Supp. 2d 453 (E.D. Pa. 2002) ............ 18

*Lane v. Franks*, — U.S. —, 134 S. Ct. 2369 (2014)........................... 6, 7

*Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259 (3d Cir. 2007) ............ 12, 13, 14

*Lombardo v. Pennsylvania, Dept. of Public Welfare*, 540 F.3d 190 (3d Cir. 2008).................... 16

*Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933 (3d Cir. 1997) ............ 18

*Michtavi v. Scism*, 808 F.3d 203 (3d Cir. 2015) .......................... 15

*Miller v. Clinton County*, 544 F.3d 542 (3d Cir. 2008) ................................................ 10

*Munroe v. Central Bucks Sch. Dist.*, 805 F.3d 454 (3d Cir. 2015) ......................... 10, 12

*Pearson v. Callahan*, 555 U.S. 223 (2009) ............................................................... 5

*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) ................................................... 10, 11

*Queer v. Westmoreland County*, 296 Fed. Appx. 290 (3d Cir. 2008) ......................... 14

*Regan v. Twp. of Lower Merion*, 36 F. Supp. 2d 245 (E.D. Pa. 1999) ....................... 20

*Reichle v. Howards*, __ U.S. __, 132 S. Ct. 2088 (2012) ....................................... 15

*Reilly v. City of Atlantic City*, 532 F.3d 216 (3d Cir. 2008) ................................... 15

*Saucier v. Katz*, 533 U.S. 194 (2001) ...................................................................... 5

*Scrip v. Seneca*, 651 Fed. Appx. 107 (3d Cir. 2016) ......................................... 13, 14

*Sharp v. Johnson*, 669 F.3d 144 (3d Cir. 2012) ..................................................... 15

*Taylor v. Barkes*, __ U.S. __, 135 S.Ct. 2042 (2015) (per curiam) ......................... 15

*Wardlaw v. City of Phila. Streets Dep't*, 378 Fed. Appx. 222 (3d Cir. 2010) ............ 19

*Werkheiser v. Pocono Twp.*, 780 F.3d 172 (3d Cir. 2015) ....................................... 16

**Statutes**

1 Pa. C.S. § 2310 .............................................................................................. 16, 17

42 Pa. C.S. § 8522 ................................................................................................. 17

42 Pa. C.S. §§ 8521 ............................................................................................... 17

42 U.S.C. § 1983 ........................................................................................ 1, 3, 4, 5

77 P.S. § 481 ......................................................................................................... 18

**Rules**

Fed. R. Civ. P. 56 ................................................................................................... 4

Defendant Mark Mixner ("Mixner"), by counsel, respectfully submits this memorandum of law in support of his Motion for Summary Judgment.

## I.  INTRODUCTION

There is no dispute in this case that on or about November 18, 2014, Mixner, who was the Vice President for Administration and Finance at West Chester University ("West Chester") met with Plaintiff, who was West Chester's Director of Budget and Financial Planning ("Budget Director") reporting to Mixner, and informed her that he would not be reappointing her to her position when her contract expired at the end of June 2015. There is also no dispute that, two weeks earlier on November 4, Plaintiff told Mixner that she could no longer do her job and asked for a reclassification to a lower level while keeping her current salary. Finally, there is no dispute that Plaintiff, starting in September 2012, criticized the process that West Chester used to put together its budget reports in internal university committee meetings.

Plaintiff's criticism was wrong when she first raised it, and it is wrong today. But for purposes of the pending claims against Mixner, the fact that her criticism was wrong is irrelevant. The claim under 42 U.S.C. § 1983 ("Section 1983") asserts retaliation for speech protected by the First Amendment—all that matters is whether Mixner made the decision not to reappoint Plaintiff because Plaintiff engaged in speech protected by the First Amendment. On these grounds, Plaintiff's claim is legally and factually insufficient.

Plaintiff's speech was not protected by the First Amendment. When as West Chester's Budget Director she expressed an opinion about how West Chester ought to prepare its budget to internal university committees, at a meeting she was invited to attend in her role as Budget Director, she was speaking as an employee and not as a citizen. Further, even if Plaintiff was speaking as a citizen, the way in which she chose to challenge her supervisor in these meetings undermined Mixner's trust and confidence in her, making it difficult for him to continue to

1

supervise her and necessitating the action he took. And even if Plaintiff has an arguable claim on any of these points, Mixner is entitled to qualified immunity unless the law is clearly established in Plaintiff's favor. She cannot.

Moreover, even if Plaintiff's statements were protected by the First Amendment, she cannot prove that Mixner decided not to reappoint her because of those statements. Plaintiff had been complaining for more than two years, and during that time Mixer took no negative action against her, even reappointing her to a two-year term in 2013. The only thing that changed immediately prior to Mixner's decision was not protected speech, but rather it was Plaintiff's request for a demotion, with less responsibility but without a corresponding pay cut. Mixner, understandably, could not make this happen. When Plaintiff told Mixner that she could not do her job anymore, she left Mixner with no choice. Plaintiff has no evidence whatsoever to overcome this logical conclusion.

Plaintiff's emotional distress claims against Mixner in this employment case clearly fail. Mixner, as a state official, is entitled to sovereign immunity from torts within the scope of his employment. Even if there is an emotional distress claim, any such claim arises from Mixner's actions as Plaintiff's boss, making it clearly within the scope of his employment. Further, the claim is barred by state worker's compensation law. Finally, the facts of the case fall well short of the standard for any claim of intentional or negligent infliction of emotional distress.

Mixner is entitled to summary judgment.

## II.    BACKGROUND

### A.    Facts.

The facts relevant to this motion—either undisputed or in the light most favorable to Plaintiff as the nonmovant—are set forth in Mixner's accompanying Statement of Facts. Those facts are incorporated herewith.

### B.     Procedural History.

Plaintiff initiated this matter by filing a Complaint on May 14, 2015, purporting to state a First Amendment claim, a state whistleblower law claim, and two state common law claims for intentional and negligent infliction of emotional distress against West Chester, the Pennsylvania State System for Higher Education, and numerous state officials. *See* Doc. No. 1. On December 9, 2015, the Court entered an Opinion and Order dismissing the Complaint in full. *See* Doc. Nos. 9, 10. The Section 1983 claim against the state entities and the individuals in their official capacities were dismissed with prejudice pursuant to the Eleventh Amendment, while this claim against the individuals in their individual capacities was dismissed without prejudice. *See* Doc. No. 9 at 9. The Court also allowed Plaintiff to restate her state law claims in an amended complaint, without ruling on them. *See id.* at 10 n.6. On January 15, 2016, Plaintiff filed her First Amended Complaint ("FAC"), naming as defendants (with one exception) the same entities and individuals that she had sued previously.[1] *See* Doc. No. 16. The FAC purported to state (a) a claim under Section 1983 against Weisenstein, Dowdy, Mixner, Pavlovich, and Johnson (the "Individual Defendants"); (b) a claim under the state whistleblower law against unnamed defendants; (c) claims of intentional and negligent infliction of emotional distress against all Defendants. *See* FAC ¶¶ 50-66. Following briefing, the Court dismissed all claims except for a Section 1983 claim against Mixner in his individual capacity and two common law emotional distress claims against Mixner. *See* Order, Doc. No. 23. Mixner now moves for summary judgment on the Section 1983 and emotional distress claims.

---

[1]     Plaintiff did not bring the second complaint against Ginger Coleman, who had been named in the initial complaint but had been effectively dismissed within the body of Plaintiff's response to the motion to dismiss. *See* Doc. No. 4 at 29.

III.    **ARGUMENT**

A.    **Standard of Review.**

A party is entitled to summary judgment if it can show "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A movant that will not bear the burden of proof on an issue at trial satisfies its initial responsibility on summary judgment by "'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In that situation, a movant is entitled to summary judgment if the nonmoving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. The Court must view the evidence presented in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

B.    **Mixner Is Entitled to Qualified Immunity on the First Amendment Claim.**

Section 1983 provides a cause of action against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The statute "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). To state a claim, a plaintiff must show that the defendants acted under color of state law, that they violated the plaintiff's federal constitutional or statutory rights, and that the violation of rights caused injury. *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005).

For a Section 1983 claim, the defense of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity requires the Court to consider two issues: (1) whether the plaintiff has shown a violation of a federal right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court may consider these issues in any order, and the plaintiff's failure to establish either issue entitles a defendant to immunity from liability and from trial. *Pearson*, 533 U.S. at 232, 236.

The lone remaining theory of liability under Section 1983 asserted in this case is unlawful retaliation in violation of the First Amendment against Mixner. *See* SAC, Count I; Order, Doc. No. 23 (dismissing with prejudice all Section 1983 claims except a claim against Mixner in his individual capacity). But the evidence does not support the existence of any such constitutional violation, and, moreover, any theory relied upon by Plaintiff in support of the existence of a constitutional violation is not based on clearly established law.

1.    Plaintiff Cannot Establish a First Amendment Retaliation Claim.

"To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). For the first factor, "[t]he threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation." *Eichenlaub v. Twp. of*

*Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). "[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006) (*quoting Connick v. Myers*, 461 U.S. 138, 154 (1983)). "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill*, 455 F.3d at 241-42 (*citing Garcetti*).

Here, Plaintiff has not engaged in protected speech because, in the instances of speech she claims were protected, she was speaking as an employee and not as a citizen. Further, Mixner had adequate independent justification for declining to reappoint Plaintiff to her position, because Plaintiff openly refused to adopt Mixner's budget assumptions making it impossible for them to continue to work together. Finally, even if Plaintiff engaged in protected speech, the indisputable timeline of events shows no causal link between protected speech and Mixner's decision.[2] Mixner is entitled to summary judgment for any one of these three reasons.

a)      *Plaintiff Spoke as an Employee, Not a Citizen.*

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Lane v. Franks*, — U.S. —, 134 S. Ct. 2369, 2378-80 (2014) (*quoting Garcetti*, 547 U.S. at 421). This is because "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Garcetti*, 547 U.S. at 421. In determining whether someone is speaking as an employee or as a citizen,

---

[2]      For purposes of summary judgment, Mixner does not dispute that Plaintiff's alleged speech involved a matter of public concern.

"[t]he proper inquiry is a practical one." *Id.* at 424. If the speech at issue is itself ordinarily within the scope of an employee's duties it is not protected. *Lane*, 134 S.Ct. at 2379. A "practical" inquiry means that it takes into account the entirety of an employee's relationship with the employer, including but not limited to job descriptions. *Garcetti*, 547 U.S. at 424. Under Third Circuit law, a plaintiff's speech is considered part of his or her official duties "if it relates to 'special knowledge' or 'experience' acquired through his [or her] job." *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009) (citing *Foraker v. Chaffinich*, 501 F.3d 231, 240 (3d Cir. 2007)).

Plaintiff has identified three instances of speech she claims was protected: (1) her statement to West Chester's Administrative Budget Committee ("ABC") on September 20, 2012, questioning the assumptions and veracity of the West Chester Budget Report ("BUD Report"); (2) her internal memorandum to the ABC repeating her position dated September 27, 2012; and (3) her statement "on the same topic" to West Chester's Enrollment Management Committee ("EMC") on October 29, 2014. *See* Pl.'s Resp. to Interrog. No. 5; *see also Eichenlaub*, 385 F.3d at 282 (noting that a plaintiff must identify the particular protected speech at issue). The first two instances of speech are essentially the same—Plaintiff made a report to the ABC questioning the budget process in two separate forms. And the third instance occurs more than two years later and to a separate group, but by Plaintiff's own admission it concerns the "same topic." *See* Pl.'s Resp. to Interrog. No. 5.

In all these instances—all reflecting the same complaint, made to two different groups at three different times—Plaintiff was speaking within her role as Budget Director. In each case, she was speaking to an internal West Chester committee on a West Chester budget issue relating solely to the "special knowledge" and "experience" she acquired by virtue of her job duties. *See*

7

*Gorum*, 561 F.3d at 185. She was only attending these meetings and had access to these committees by virtue of her employment status. She was reporting her concerns on budget issues. The topic, the audiences, and the circumstances surrounding each instance all involved core functions of her job as Budget Director.[3] Indeed, it is difficult to imagine a clearer example of employee speech than a high-ranking budget official expressing an opinion to internal committees about how budgets should be reported.

Plaintiff contends that her job description does not reflect her actual job because it includes responsibilities that, in practice, she did not have. In short, she claims that it was not her job to recommend changes to senior university leaders because, in practice, those leaders did not follow her recommendations. But when an official's job requires offering advice and recommendations, it does not guarantee that the advice will be followed. In fact, this position directly contradicts *Garcetti* itself. *See* 547 U.S. at 414-15 (noting that the plaintiff's superior in that case did not follow the plaintiff's recommendation). Further, Plaintiff's overly narrow and fixed reading of what falls within her job duties is inconsistent with *Gorum* and *Foraker*. In *Gorum*, a college professor contended that acting as an advisor to a student was citizen speech because it "went beyond his specified responsibilities" in his union agreement. *Id.* at 185. The Court called this analysis "misguided." *Id.* Because the professor had special knowledge of the policies and procedures about which he was advising the student, the Court held that he was acting within his job duties. *Id.* at 186. Similarly, the professor argued that his decision to revoke an invitation to the school's president to speak at a prayer breakfast was citizen speech, but the

---

[3]     Plaintiff's job required her to "[r]eview and recommend . . . changes to the [West Chester] budget allocation processes" and to work with "a wide range of senior leaders." *See* Director of Budget & Financial Planning Job Description, Doc. No. 1-2. It also required her to "work closely" with West Chester administrators "on all University budget and financial matters." *See id.* This is precisely what Plaintiff was doing in her cited instances of speech.

Court applied the more flexible analysis to determine what constituted the professor's "job duties" and held that, because the professor was chair of the student club hosting the breakfast and this action fell generally within the scope of his duties as professor, the professor's decision was employee speech. *Id.* at 186. In *Foraker*, the Third Circuit held that firearms instructors who internally reported unsafe conditions at their firing range were speaking within their job duties, even though making reports about safety was not explicitly within their duties. 501 F.3d at 241-42. *See also Hays v. LaForge*, No. 14 -0148, 2015 WL 4087070, at *13 (N.D. Miss. July 6, 2015) (holding that a university faculty member's statements criticizing the university budget report to a student newspaper were within the realm of the plaintiff's responsibilities and professional involvement as a university department chair).

Like in *Gorum*, Plaintiff was only speaking to the ABC and EMC about budget issues ***by virtue of her position as Budget Director***.[4] In fact, Plaintiff's speech to these committees about her budget concerns is ***much*** more in line with the core responsibilities of a budget official than the decision of a professor to revoke a speaking invitation at a prayer breakfast. *See Gorum*, 561 F.3d at 186. Plaintiff's internal complaints are also quite similar to the complaints of the firearms instructors in *Foraker*, where complaints about the safety of their working conditions fell within *Garcetti* even though in making the report the instructors "may have exceeded the expectations" of their job requirements. 501 F.3d at 242. The Third Circuit is clear that a plaintiff must show more than a small, technical deviation from his or her job duties to shift speech from that of an

---

[4]     Whether the committee members on the ABC or EMC were within Plaintiff's "chain of command" is irrelevant to the analysis, because it does not necessarily change Plaintiff's speech to citizen speech. *See Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 116 (2d Cir. 2011). In Plaintiff's job she was ***supposed*** to work with university committees like these, even if she did not technically report to the committee members. Just because she was not talking to her boss does not mean she was not speaking as an employee.

employee to that of a citizen. Here, both the ***topic*** of Plaintiff's speech and the ***forum*** in which it was delivered demonstrate that it was made as an employee, not a whistleblowing citizen.[5]

> b) *Mixner's Decision Not to Reappoint Plaintiff Was Justified Based on his Needs as an Employer.*

Even where a state employee speaks as a citizen on a matter of public concern, "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). State employers, like private employers, "need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti*, 547 U.S. at 418. "[P]ublic employers are still employers, and they therefore have the same concern for efficiency and the need to review and evaluate employees as any other employer in order to ensure that the actions of employees do not interfere with the performance of public functions." *Miller v. Clinton County*, 544 F.3d 542, 547 (3d Cir. 2008). "A public employer accordingly may impose speech restrictions that are necessary for efficient and effective operations." *Munroe v. Central Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015). Restrictions of a public employer on citizen speech must satisfy the *Pickering* balancing test, which requires the court to balance the

---

[5]     Indeed, Plaintiff's speech here is unlike the speech in other cases made to law enforcement authorities, the courts, or the press, where the Third Circuit is more likely to find that the speech was made as a citizen. *See Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 988 (3d Cir. 2014) (holding that report to the Philadelphia Inquirer and FBI, where there was "no evidence that [this] communication . . . fell within the scope of [the employee's] routine job responsibilities," was protected speech); *Lane*, 134 S.Ct. at 2379 (holding that "[s]worn testimony in judicial proceedings is a quintessential example of speech as a citizen").

The Third Circuit recognized exactly this distinction in its decision in *Jerri v. Harran*, 625 Fed. Appx. 574 (3d Cir. 2015). In that case, the Court distinguished between ***internal*** reporting by an official about government waste, which was unprotected employee speech, and ***external*** reporting by that official to a reporter and law enforcement authority, which was protected. *Id.* at 580-81. This case involves only the former and not the latter.

employee's interest in commenting on the matter and the public's interest in hearing the speech against the state's interest in promoting the efficient operation of its workplace. *Id.* The state maintains an interest in maintaining "close working relationships for which personal loyalty and confidence are necessary" and in avoiding behavior which "impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004) (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)).

Here, the *Pickering* balancing test justified the action that Mixner took in declining to reappoint Plaintiff to her position. In other words, even if Plaintiff was speaking as a citizen, Mixner had independent justifications for his decision. In the ABC and EMC meetings, Plaintiff was openly disagreeing with Mixner's budget assumptions, thwarting his ability to make a coherent presentation to these committees. In manner and tone, Plaintiff was undermining her boss. Their "hierarchical proximity" is an important consideration in determining how disruptive the speech was to business operations. *See Hara v. Pa. Dep't of Educ.*, 492 Fed. Appx. 266, 268 (3d Cir. 2012) (affirming summary judgment based on *Pickering* balancing test because school superintendent's letter published in a newspaper criticizing funding cuts by the Department of Education eroded the working relationship between the school's highest ranking official and the department). Regardless of the merit of Plaintiff's objections, the way in which she chose to raise it by challenging Mixner had the predictable consequence of destroying any "close working relationship[]" between the two. *See Curinga*, 357 F.3d at 310 (noting that a court properly considers the employer's interest in maintaining such working relationships).[6] As Budget Director reporting to the Vice President of Finance, it was important for Plaintiff to have a

---

[6]     Of course, Mixner here assumes for argument only that there was any connection between Plaintiff's internal statements and his decision not to reappoint her.

functional working relationship with Mixner. Mixner had to trust Plaintiff's ability to do her job well, which included executing his decisions. It is without question that Plaintiff's decision to not only disregard Mixner but openly dispute his decisions in committee meetings had "some potential to affect [West Chester's] operations." *See Garcetti*, 547 U.S. at 418. Because Mixner properly had an interest in the efficient operation of his department on budget issues, he had no choice but to decline to reappoint Plaintiff.

Plaintiff's tone in the ABC and EMC meetings also matters. *Munroe*, 805 F.3d at 473-74 (noting that the district court properly considered the "opprobrious tone" of the plaintiff's speech). In the EMC meeting, Plaintiff and Mixner disagreed about what budget assumptions they would use to present budget figures; Mixner, as Plaintiff's superior, decided to use more conservative figures with which Plaintiff disagreed. But Plaintiff then went into the EMC meeting and openly criticized Mixner's budget assumptions, even going so far as refusing to present his assumptions. Even if Plaintiff's criticism was valid, the manner in which she went about undermining Mixner and disrupting the effective functioning of the ABC and EMC, alone, justified Mixner's decision.

        c)     *The Evidence Does Not Support a Causal Link Between Plaintiff's Speech and Mixner's Decision.*

To establish the requisite causal connection in a First Amendment retaliation case, "a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Without either temporal proximity or a pattern of antagonism, a plaintiff "must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should

infer causation." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

On the issue of causation, the most significant admission from Plaintiff is that her complaints from September 2012 through October 2014 all involved the "same topic." *See* Pl.'s Resp. to Interrog. No. 5. According to Plaintiff's version of the facts, she beat a steady drum for over two years. However, during those 25 months there was ***no retaliatory conduct*** on the part of Mixner or anyone else.[7] In fact, Plaintiff was ***reappointed*** to her position in 2013 for a two-year term. Plaintiff's actions at the EMC meeting in October 2014 show nothing different than what she had been doing previously; there is no evidence that anything extraordinary happened at this meeting that had not been happening for some time. However, immediately preceding Mixner's decision, there ***was*** one extraordinary event—Plaintiff telling Mixner that she could no longer do the job and requesting a demotion at the same level of pay. The ***only rational conclusion*** that a jury could make from the evidence is that it was Plaintiff's request for a demotion that altered Mixner's calculus and caused his decision not to reappoint Plaintiff.

Under these facts, there is clearly no "unusually suggestive temporal proximity." *See Lauren W.*, 480 F.3d at 267. The gap of ***more than two years*** between the time that Plaintiff started criticizing Mixner to the ABC and Mixner's decision not to reappoint her is insufficient as a matter of law. *See Scrip v. Seneca*, 651 Fed. Appx. 107, 111 (3d Cir. 2016) (affirming dismissal, holding that a time period of 17 months between the speech and an employee's termination "does not support an inference of causation"); *Burger v. Sec'y of Revenue ex rel. Pa.*

---

[7]     The closest Plaintiff comes to alleging retaliation is her contention that she was stripped of her responsibilities as liaison to the ABC as a result of her complaints. This, however, occurred in 2012 immediately after the first ABC meeting where Plaintiff raised her concerns. She can cite no other actions taken by Mixner against her in the two years following this meeting.

*Dep't of Revenue*, 575 Fed. Appx. 65, 69 (3d Cir. 2014) (affirming summary judgment, holding that "continuing [the plaintiff's] employment for two years and giving [him] a favorable evaluation some months after he filed a complaint" was insufficient to show temporal proximity); *Queer v. Westmoreland County*, 296 Fed. Appx. 290, 293-94 (3d Cir. 2008) (affirming summary judgment, holding that nonrenewal of a contract more than one year after the protected speech was insufficient to show temporal proximity, especially where the contract had been renewed in between the protected speech and the eventual nonrenewal decision).

Alternatively, Plaintiff cannot establish any "pattern of antagonism coupled with timing." *See Lauren W.*, 480 F.3d at 267. Even if a jury believes that Plaintiff was punished in 2012 by being stripped of her duties as liaison to the ABC, this one lone cited action is far from sufficient to establish a pattern. *See Scrip*, 651 Fed. Appx. at 111 (holding that "two unspecified disciplinary actions over a period of more than seventeen months" was insufficient to show a pattern); *Burger*, 575 Fed. Appx. at 69 (holding that the employer's decision to assign the plaintiff to telephone duty after his protected speech did not support the existence of a pattern of antagonism); *Queer*, 296 Fed. Appx. at 294 (holding that two meetings that plaintiff characterized as "antagonistic" in which the protected speech was raised as a concern was not sufficient to show a pattern). There is no other evidence of a pattern of antagonism that would support an inference of causation. In short, there is no legally sufficient evidence to support the contention that Mixner decided not to reappoint Plaintiff because of the complaints she had been making for years.

       2.     <u>It Is Not Clearly Established That Plaintiff Engaged in Protected Speech.</u>

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*,

563 U.S. 731, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). In order to survive a qualified immunity challenge, "there must be precedent indicating that the ***specific*** right at issue is clearly established." *Michtavi v. Scism*, 808 F.3d 203, 207 (3d Cir. 2015) (emphasis added).[8]

In order for Plaintiff to succeed on her claim, she must not only show that she engaged in protected speech, but that it was clearly established under the law that she had engaged in protected speech. It is not enough for Plaintiff to argue that the right to be free from retaliation for protected speech was clearly established, because this "broad general proposition" is not enough. *See Reichle v. Howards*, __ U.S. __, 132 S. Ct. 2088, 2093-94 (2012) (holding that the statement that "'the First Amendment prohibits government officials from subjecting an individual to retaliatory action' for his speech" was not sufficiently particularized). She must show that, even if Mixner decided not to reappoint her based on her complaints about the budget process, it was clearly established that those complaints were protected by the First Amendment.

But, as demonstrated above, there is no Supreme Court or Third Circuit case law clearly establishing that someone in the position of budget director who criticizes the budget process to two internal university committees has engaged in citizen speech. *But cf. Reilly v. City of Atlantic City*, 532 F.3d 216, 232 (3d Cir. 2008) (holding in this context that "[t]he protected status of courtroom testimony was clearly established"). Even if Plaintiff has a colorable argument that

---

[8]       In *Michtavi*, the Third Circuit followed the Supreme Court's recent decision in *Taylor v. Barkes*, __ U.S. __, 135 S.Ct. 2042 (2015) (per curiam), which had reversed the Third Circuit's denial of qualified immunity and emphasized the importance of specific and unequivocal Supreme Court or Court of Appeals authority in analyzing whether a right is clearly established.

she was speaking as a citizen and not as an employee, this does mean that the law under *Garcetti* as it was applied to Plaintiff was clearly established to Mixner. *See Werkheiser v. Pocono Twp.*, 780 F.3d 172, 181 (3d Cir. 2015) (noting that "not all retaliation violates the First Amendment" and holding that declining to reappoint an official in retaliation for political speech was not a clearly established violation); *Beckinger v. Twp. of Elizabeth*, 697 F. Supp. 2d 610, 630 (W.D. Pa. 2010) (applying qualified immunity where there was "ambiguity" after *Garcetti* regarding "whether the testimony of a government employee at a judicial hearing in the course of the employee's duties may constitute speech as a citizen entitled to First Amendment protection").

Thus, even though her speech was unprotected employee speech as a matter of law, Plaintiff's novel arguments to narrow *Garcetti* in such a way that her speech might be protected, even if potentially viable, cannot overcome qualified immunity because it was not clearly established at the time. Mixner is entitled to summary judgment.

### C.    Mixner Is Entitled to Summary Judgment on the Emotional Distress Claims.

#### 1.    Mixner Is Entitled to Sovereign Immunity.

"Our Constitution established a system of 'dual sovereignty between the States and the Federal Government,' in which the States 'retain a residuary and inviolable sovereignty.'" *Lombardo v. Pennsylvania, Dept. of Public Welfare*, 540 F.3d 190, 194 (3d Cir. 2008) (*quoting Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991); *Alden v. Maine*, 527 U.S. 706, 715 (1999)). State sovereign immunity is immunity from liability, distinct from jurisdictional Eleventh Amendment immunity from suit in federal court. *Id.* "Under Pennsylvania law, the Commonwealth enjoys sovereign immunity unless the General Assembly 'specifically waives sovereign immunity.'" *Id.* (*quoting* 1 Pa. C.S. § 2310). The Commonwealth of Pennsylvania has firmly established that sovereign immunity bars damages claims for violations of state law, including intentional misconduct, against the Commonwealth, its agencies and its officials and employees acting

16

within the scope of their duties,[9] except where the legislature provides otherwise.[10] 1 Pa. C.S.

§ 2310; 42 Pa. C.S. §§ 8521-8522.

As this Court previously noted specifically with respect to Mixner, "Pennsylvania's state

sovereign immunity protects Commonwealth employees for acts within the scope of their

employment." Opinion, Doc. No. 22, at 11 (citing *Watkins v. Pa. Bd. of Prob. and Parole*, No

02-cv-2881, 2002 WL 32182088, at *8 (E.D. Pa. Nov. 25, 2002)). Pennsylvania has adopted the

Restatement (Second) of Agency, which provides that "conduct is within the scope of

employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs

substantially within the authorized time and space limits [and] (c) it is actuated, at least in part,

by a purpose to serve the master . . . ." *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000)

(quoting Restatement (Second) Agency § 228). The existence of a personal motive does not

necessarily mean that alleged conduct was outside the scope of employment, if the conduct was

also motivated by a desire to serve the employer. *Id.* at 380-81. "[E]ven unauthorized acts may

---

[9]     Title 1 Pa. C.S. § 2310 provides in relevant part: "Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." Section 2310 immunizes not only Commonwealth officials acting in their official capacity but also Commonwealth agencies. *See Johnson v. Commonwealth of Pa. DOC*, No. 92-5149, 1992 WL 392601, at *1 (E.D. Pa. Dec. 18, 1992). Title 42 Pa. C.S. §§ 8521(a) provides that "Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa. C.S. § 2310 (relating to sovereign immunity, specific waiver) or otherwise."

[10]     Sovereign immunity applies to all claims except for nine narrowly enumerated exceptions, none of which apply in this case. The categories are (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.  42 Pa. C.S. § 8522(b). Tort claims and civil rights actions are not within these narrow exceptions.  *See Robinson v. Ridge*, 996 F. Supp. 447 (E.D. Pa. 1997), *aff'd*, 175 F. 3d 1011 (3d Cir. 1999).

be within the scope of employment 'if they are clearly incidental to the master's business.'" *Id.* at 381 (citing *Shuman Estate v. Weber*, 276 Pa. Super. 209, 216, 419 A.2d 169 (1980)).

Here, the allegations against Mixner all fall squarely within his job, and thus he is protected by sovereign immunity. Plaintiff claims that Mixner "put [her] in predicaments where she was coerced to lie about information," "scolded [her] for objecting to or even questioning" him, and "directed [her] to complete tasks without the proper support or information to make it a valuable and a meaningful outcome." *See* Pl.'s Resp. to Interrog. No. 14. In other words, Plaintiff contends that Mixner was a difficult boss. Whether or not this is true, the actions that form the basis of the alleged emotional distress claim all fall squarely within the scope of Mixner's job duties, and he is thus protected by sovereign immunity.

> 2.     Plaintiff's Emotional Distress Claims Are Barred by Pennsylvania's Worker's Compensation Act.

"Pennsylvania's workers' compensation statute provides the sole remedy 'for injuries allegedly sustained during the course of employment.'" *Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997) (quoting *Dugan v. Bell Telephone of Pa.*, 876 F. Supp. 713, 723 (W.D. Pa. 1994)); *see also* 77 P.S. § 481. The workers' compensation bar applies generally to both intentional and negligent infliction of emotional distress claims.[11] *Id.* An intentional or negligent infliction of emotional distress claim arising out of an employment relationship should be dismissed under the worker's compensation bar. *Imboden v. Chowns Communications*, 182 F. Supp. 2d 453, 456-57 (E.D. Pa. 2002).

---

[11]     The Third Circuit has identified one possible exception: certain instances of intentional infliction of emotional distress rooted in sexual harassment. *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 160 (3d Cir. 1999); *accord McGovern v. Jack D's, Inc.*, No. 03-cv-5547, 2004 WL 632703, at *3 (E.D. Pa. Feb. 25, 2004) ("The case law only supports a claim of intentional infliction of emotional distress where the employer participated in the sexual harassment and then retaliated against the employee for rejecting the employer's sexual advances."). That exception does not apply here.

Here, Plaintiff alleges that she suffered emotional distress arising out of her working relationship with Mixner. She sustained her alleged injuries during the course of her employment, and there are no facts that would take the emotional distress claims out of the realm of the worker's compensation law. Any claim for intentional or negligent infliction of emotional distress is thus barred.

   3.  Plaintiff Cannot Establish a Claim of Intentional or Negligent Infliction of Emotional Distress.

To be actionable as intentional infliction of emotional distress, the conduct must be of an "extreme or outrageous type." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (quoting *Rinehimer v. Luzerne County Community College*, 372 Pa. Super. 480, 494, 539 A.2d 1298, 1305 (1988)). The conduct alleged must be "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (quoting *Buczek v. First National Bank of Mifflintown*, 366 Pa. Super. 551, 558, 531 A.2d 1122, 1125 (1987)). The question of outrageousness is a matter to be determined by the court. *Id.* Specifically, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Id.* For a negligent infliction of emotional distress claim, Pennsylvania law restricts the cause of action to four scenarios: "(1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." *Wardlaw v. City of Phila. Streets Dep't*, 378 Fed. Appx. 222, 225 (3d Cir. 2010) (quoting *Toney v. Chester County Hosp.*, 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008)).

Nothing Plaintiff alleges in this case rises to the level of extreme or outrageous conduct sufficient to support an intentional infliction of emotional distress claim. Plaintiff's allegations against Mixner are limited to Mixner's behavior toward her in his role as her boss. Directing her to make certain budget assumptions, and even scolding her in some circumstances, is hardly the kind of behavior which would be "utterly intolerable in a civilized society." *See Cox*, 861 F.2d at 395.

Moreover, Plaintiff does not allege a situation that would allow her to sustain a negligent infliction of emotional distress claim. There is no contractual or fiduciary duty in this context arising out of the standard employer-employee relationship. *See Denton v. Silver Stream Nursing and Rehabilitation Center*, 739 A.2d 571, 578 (Pa. Super. Ct. 1999). Indeed, normal employment decisions—even a termination—do not rise to the level of a breach sufficient to state a claim of negligent infliction of emotional distress. *See Regan v. Twp. of Lower Merion*, 36 F. Supp. 2d 245, 252 (E.D. Pa. 1999). Thus, Mixner's decision not to reappoint Plaintiff cannot form the basis of a negligent infliction of emotional distress claim, and his other behavior toward Plaintiff was within his role as her boss. Nothing rose to the level of a breach of a contractual or fiduciary relationship that would support a negligent infliction of emotional distress claim.

## IV.    CONCLUSION

Wherefore, this Court should grant Mixner summary judgment and dismiss all claims against him.

Dated: October 31, 2016                     Respectfully submitted,

                                            BRUCE R. BEEMER
                                            Attorney General

                                            BY: /s/ Kevin R. Bradford
                                            KEVIN R. BRADFORD (Pa. No. 88576)
                                            Senior Deputy Attorney General

                                            BY: /s/ Stephen R. Kovatis
                                            STEPHEN R. KOVATIS (Pa. No. 209495)
                                            Deputy Attorney General